FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 16, 2026

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

ISRAEL B.,[1]

Plaintiff,

v.

FRANK BISIGNANO,
Commissioner of Social Security,

Defendant.

No.   1:25-cv-3211-EFS

**ORDER AFFIRMING THE ALJ'S DENIAL OF TITLE 2 BENEFITS, AND REVERSING THE ALJ'S DENIAL OF TITLE 16 BENEFITS BEGINNING JUNE 25, 2024**

Plaintiff Israel B. asks the Court to reverse the Administrative Law Judge's (ALJ) denial of Title 2 and Title 16 benefits because the ALJ committed several errors. Substantial evidence supports the ALJ's

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." See LCivR 5.2(c).

DISPOSITIVE ORDER - 1

Title 2 nondisability decision; however, substantial evidence only supports the ALJ's Title 16 nondisability decision for the period before June 25, 2024; thereafter, the ALJ's evaluation failed to fully consider Plaintiff's declining mental health and whether substance abuse was a material contributing factor.

## I.    Background

Plaintiff filed his applications for Title 2 and 16 benefits in February 2020, alleging onset on December 31, 2017.[2] Plaintiff, who had previously worked as a heavy machine mechanic, reported difficulty lifting his left arm and walking further than 30 feet; chronic pain in his bones, joints, and lower back; and suffering from nausea, stomach aches, dizziness, chills, stomach cramps, hallucinations, delirious thoughts, memory fog, severe depression, and anxiety.[3]

After his applications were initially denied, a telephone hearing was held in 2022 before ALJ Glenn Meyers. Plaintiff did not attend.[4]

[2] Administrative Record (AR) 274–95.

[3] AR 338–46, 365–71, 612–41.

[4] AR 64–73, 139–64.

DISPOSITIVE ORDER - 2

The ALJ issued a decision finding Plaintiff not disabled.[5] Plaintiff appealed the denial to district court; later, pursuant to a stipulation of the parties, the matter was remanded for a new evaluation.[6]

A second ALJ hearing was held in July 2025 with ALJ Cecilia LaCara.[7] Plaintiff testified that his back and elbows hurt and he struggles with stress and maintaining good behavior, prefers to be by himself and not interact with others, and believes his mental health has gotten worse in the last two years.[8] He shared that his family forced him to stay at an inpatient substance abuse facility in Mexico for

---

[5] AR 37–63. Per 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g), a five-step evaluation determines whether a claimant is disabled. If there is medical evidence of drug or alcohol addiction ("DAA"), the ALJ must then determine whether drug or alcohol use is a material factor contributing to the disability. 42 U.S.C. § 423(d)(2)(C); 20 C.F.R. § 416.935; *Sousa v. Callahan*, 143 F.3d 1240, 1245 (9th Cir. 1998).

[6] AR 678–94.

[7] AR 612–41.

[8] AR 619–25.

DISPOSITIVE ORDER - 3

almost a year; he continues to drink 6–12 beers a day.[9] He cooks, gets his food at the food bank, and assists his landlord with repair jobs.[10] He was not taking any medications as he missed his last doctor's appointment.[11] He stated that his mental health has more recently gotten worse because he now has difficulty maintaining good behavior when he interacts with others.[12]

The ALJ again issued a decision denying disability.[13] The ALJ found Plaintiff's alleged symptoms were "not entirely consistent with the medical evidence and other evidence"[14] and found:

---

[9] AR 623–29.

[10] AR 630–31.

[11] AR 631.

[12] AR 625.

[13] AR 585–611.

[14] AR 596. As recommended by the Ninth Circuit in *Smartt v. Kijakazi*, the ALJ should consider replacing the phrase "not entirely consistent" with "inconsistent." 53 F.4th 489, 499, n.2 (9th Cir. 2022).

DISPOSITIVE ORDER - 4

- the opinions of Charles Bulfinch, DO, and Gregory Saue, MD, persuasive; and

- the opinions of Karen Mansfield-Blair, PsyD, Patrick Metoyer, PhD, David Morgan, PhD, Dana Harmon, PhD, Dan Donahue, PhD, Staci Day, PA-C, and Renee Eisenhauer, PhD, were not persuasive.[15]

As to the sequential disability analysis, the ALJ found:

- Plaintiff met the insured status requirements through September 30, 2023.

- Step one: Plaintiff had not engaged in substantial gainful activity since December 31, 2017, the alleged onset date.

- Step two: Plaintiff had the following medically determinable severe impairments: generalized anxiety disorder, major depressive disorder, degenerative disc disease, and arthropathy.

---

[15] AR 597–603.

DISPOSITIVE ORDER - 5

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC: Plaintiff had the RFC to perform medium work except:

  he can occasionally climb ladders, ropes, or scaffolds; he
  can frequently balance, stoop, kneel, crouch, and crawl;
  he can understand, remember, and carry out simple work
  tasks and instructions with sufficient concentration,
  pace, and persistence; he can interact[] with supervisors
  and coworkers frequently; he can interact
  with the general public occasionally; and he can have
  occasional changes in the work setting.

- Step four: Plaintiff has no past relevant work.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as cleaner II, hand packager, and floor waxer.[16]

Plaintiff now appeals to district court.[17]

---

[16] AR 591–604.

[17] ECF No. 1. *See* 20 C.F.R. §§ 404.981, 422.201.

## II.    Standard of Review

When considering the ALJ's findings, the court is constrained to the reasons and supporting explanation offered by the ALJ.[18] The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error"[19] and such error impacted the nondisability determination.[20] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[21]

---

[18] *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

[19] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g).

[20] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

[21] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028,

DISPOSITIVE ORDER - 7

### III.  Analysis

Plaintiff argues the ALJ erred by (1) not considering his gastrointestinal (GI) disorders, (2) not properly assessing the medical opinions, (3) not properly assessing his symptom allegations, and (4) not assessing the evidence of illiteracy. In response, the Commissioner argues that substantial evidence supports the ALJ's non-disability evaluation. As is explained below, the ALJ's overall nondisability decision is supported by substantial evidence for the pre-June 25, 2024 period.

---

1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

DISPOSITIVE ORDER - 8

**A.      Step Two (Severe Impairment): Plaintiff fails to establish error.**

At step two, the ALJ determines whether the claimant suffers from a "severe" impairment, i.e., one that significantly limits his physical or mental ability to do basic work activities.[22] Plaintiff argues the ALJ reversibly erred by finding Plaintiff's GI disorders to be non-severe and by not mentioning his rectal abscess. The Commissioner argues that the ALJ's step-two findings are supported by substantial evidence and that, regardless of how Plaintiff's impairments were classified, the ALJ proceeded past step two and therefore Plaintiff's step-two argument has no impact on the final nondisability analysis.

Substantial evidence supports the step-two findings. The ALJ reasonably found Plaintiff's colitis non-severe because it occurred sporadically, was described as mild without evidence of diverticulitis upon imaging in April 2019, and responded to treatment, as Plaintiff did not report similar symptoms during other medical appointments in

---

[22] 20 C.F.R. §§ 404.1520(c), 416.920(c).

DISPOSITIVE ORDER - 9

2019.[23] Although Plaintiff had a perirectal abscess in February 2020, like he had in 2012, he reported that his difficulty with bowel movements and pain had been only for the past two weeks.[24] After the perirectal abscess was drained, Plaintiff did not seek any further treatment for an abscess, and at an appointment three months later for pain related to previously fractured ribs, he denied nausea, vomiting, and diarrhea, and he stated that he had not been sick otherwise.[25] He denied any GI blood in October 2023; and in 2024, when he sought treatment for a penile abrasion and rash, the CT results of his abdomen and pelvis were benign.[26] When he reported abdominal discomfort and diarrhea in the summer of 2024, those symptoms were believed to be caused by a medication mix-up or by gastritis or GERD for which an antacid was prescribed.[27]

---

[23] AR 594. *See, e.g.*, AR 466–69, 574.

[24] AR 455–56.

[25] AR 453–54.

[26] AR 949–50, 1001–07.

[27] AR 943–44, 960–70.

DISPOSITIVE ORDER - 10

Substantial evidence supports the ALJ's finding that the GI impairments were non-severe given that symptoms either had a minimal effect on Plaintiff's ability to work or the impairment was for less than twelve months.[28] Accordingly, there is no step-two error.

**B.    Medical Opinions: Beginning June 25, 2024, Plaintiff establishes consequential error as to the Title 16 claim.**

Plaintiff argues the ALJ erred when assessing the physical-health opinions from Dr. Bulfinch and PA-C Day and the mental-health opinions from Dr. Mansfield-Blair, Dr. Metoyer, Dr. Morgan, Dr. Harmon, and Dr. Eisenhauer. In response, the Commissioner argues the ALJ reasonably evaluated the medical opinions. As is explained below, Plaintiff fails to establish consequential error as to the ALJ's assessment of the physical-health opinions, but the ALJ's errors when assessing the mental-health opinions requires remand for a new Title 16 disability evaluation beginning June 25, 2024.

---

[28] *See* 20 C.F.R. §§ 404.1505(a), 404.1509, 416.905(a), 416.909 (requiring the impairment to have lasted or be expected to last for a continuous period of not less than 12 months).

DISPOSITIVE ORDER - 11

### 1.    Standard

The ALJ must consider and articulate how persuasive she found each medical opinion and prior administrative medical finding, including whether the medical opinion or finding was consistent with and supported by the record.[29] The factors for evaluating persuasiveness include, but are not limited to, supportability, consistency, relationship with the claimant, and specialization.[30] Supportability and consistency are the most important factors.[31]

### 2.    Physical-Health Opinions

The two physical consultative evaluations from Dr. Bulfinch and PA-C Day vary widely: Dr. Bulfinch opined that Plaintiff could perform medium work with postural limitations, and PA-C Day opined that Plaintiff could perform sedentary work with postural limitations.[32] The

---

[29] 20 C.F.R. §§ 404.1520c, 416.920c(a)–(c); *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

[30] 20 C.F.R. §§ 404.1520c, 416.920c(c)(1)–(5).

[31] *Id.* §§ 404.1520c, 416.920c(b)(2).

[32] AR 447–49, 573–83.

DISPOSITIVE ORDER - 12

ALJ found Dr. Bulfinch's 2018 opinion, which was consistent with Dr. Saue's administrative medical findings, persuasive, and PA-C Day's more limiting opinion non-persuasive.

Plaintiff argues the ALJ erred by finding Dr. Bulfinch's opinion more persuasive, because even though he was a treating provider, the record reflects that he only met Plaintiff once before issuing his opinion and his opinion lacks explanation, whereas PA-C Day's opinion is supported by her more comprehensive physical examination. The Court agrees in part.

First, substantial evidence supports the ALJ's evaluation of Dr. Bulfinch's opinion as to the period before PA-C Day's opinion. There were no noted observations or objective findings by Dr. Bulfinch listed in his report that would support limitations beyond a medium-work allowance, with Dr. Bulfinch writing, "no objective evidence" of "multiple joint pain" and listing a severity level of "none."[33] Plus, the

---

[33] AR 448–49. *Cf. Ortiz v. Bisignano*, No. 24-5407 (9th Cir. June 24, 2026 (recognizing that the doctor based his light work limitation on the

DISPOSITIVE ORDER - 13

ALJ reasonably found Dr. Bulfinch's medium-work allowance consistent with the treatment record containing normal findings of strength, motion, and gait in treatment records and emergency visits, with no mentions of observed pain or discomfort other than for acute conditions.[34] Further, as the ALJ reasonably noted, there was little treatment beyond non-steroidal anti-inflammatory medication that was prescribed for Plaintiff's joint pain related to his arthropathy and

doctor's observation that the claimant exhibited pain when moving his neck and back).

[34] *See, e.g.*, AR 420–22 (June 2018: seeking treatment for stomach ache and joint pain; observed with normal gait and station; prescribed an anti-inflammatory to relieve joint pain); AR 430–31 (Dec. 2018: seeking treatment for soreness to rib cage after getting into a fight; observed with tight muscles in low back where bruising was observed; no noted gait or reduced strength); AR 466–69 (Apr. 2019: seeking emergency treatment for abdominal pain and urine in blood; observed normal range of motion for back and lower and upper extremities and steady gait).

DISPOSITIVE ORDER - 14

degenerative disc disease.[35] While opioid pain medication was prescribed on occasion, it was not usually for muscle pain but instead for acute conditions.[36] Therefore, the ALJ reasonably found Dr.

---

[35] *See, e.g.*, AR 436 (prescribing diclofenac potassium for muscle pain); AR 422 (prescribing diclofenac sodium for multiple joint pain); AR 529 (ordering injection of ketorolac for left thumb pain and meloxicam for thumb pain and elbow sprain); AR 952–53 (prescribing diclofenac sodium, and noting that prescriber reviewed the medical file back to 2018 and, contrary to Plaintiff's statement that he had been on a pain medication for his chronic back pain, the medical file showed that he was not on any narcotics for his chronic back pain).

[36] *Compare* AR 477 (prescribing cyclobenzaprine for muscle spasm), AR 500–02 (declining to prescribe pain medication for rib and joint pain); *with* AR 406 (prescribing Percocet after tonsillectomy), AR 430–31, 485 (prescribing cyclobenzaprine for rib pain), AR 453 (prescribing hydrocodone for rib pain), AR 1144, 1150 (prescribing Norco for Plaintiff's head and hand injuries after being assaulted).

DISPOSITIVE ORDER - 15

Bulfinch's medium-work opinion persuasive for the period before late October 2021.

But contrary to the ALJ's finding otherwise, PA-C Day's October 31, 2021 physical examination was comprehensive and her report was detailed. PA-C Day observed that Plaintiff was able to heel-toe walk for only a brief distance, his ability to squat was reduced, his lateral flexion and rotation of the lumbar and cervical spine were reduced, there was pain on palpation of the posterior cervical spine and lumbar spine, the muscle bulk of his lower extremities was mildly reduced, he had mild pain during the examination of his lower extremities, his wrist range of motion was reduced, and use of his hands was limited as he had some difficulty unbuttoning, tying, and picking up an item.[37] This is the most comprehensive physical examination of record. Therefore, the ALJ erred by finding PA-C Day "only briefly explained her findings."[38]

---

[37] AR 576–81.

[38] AR 599.

DISPOSITIVE ORDER - 16

Yet following PA-C Day's evaluation, treatment records again typically noted normal range of motion and strength of the lower and upper extremities, along with edema of the lower extremities on two occasions, with no reports of observed pain, tenderness, or discomfort other than for acute conditions.[39] Accordingly, based on the typically normal findings in treatment records, the ALJ reasonably determined that PA-C Day's sedentary-work opinion was not fully consistent with the observations and findings in the treatment record after late October 2021.

---

[39] *See, e.g.*, AR 1006 (noting mild edema to left lower extremity but full range of motion bilaterally for lower extremity and for upper extremity); AR 1008 (noting full range of motion for all extremities bilaterally, and reporting only right great toe pain after kicking a wall and a rock); AR 1001 (observing full range of motion in back with no midline or paraspinal tenderness, and normal bilateral lower and upper extremities with full range of motion bilaterally, and CT results of abdomen and pelvis benign); AR 23 (noting edema).

DISPOSITIVE ORDER - 17

Nonetheless, given PA-C Day's observations, the edema, and Plaintiff's non-severe GI conditions, the ALJ's finding that the medical record and opinions from Drs. Bulfinch and Saue supported modified medium work—rather than modified light work—is not supported. Plus, the treatment record the day before PA-C Day's evaluation showed joint clicking in the interphalangeal joint and tenderness to the metacarpophalangeal joint of the left thumb.[40] Imaging in 2025 showed old posttraumatic changes in the fifth metacarpal, moderate degenerative changes at the triscaphe joint, mild degenerative changes in the radiocarpal joint, in addition to the new distal middle finger phalanx facture and prominent soft tissue swelling.[41] Therefore, the ALJ's acceptance of Dr. Bulfinch's recommended modified medium work, rather than modified light work, for the period after PA-C Day's evaluation is not adequately explained or supported by substantial

---

[40] AR 528.

[41] AR 1155–56.

DISPOSITIVE ORDER - 18

evidence.[42] Plaintiff establishes that further physical limitations beyond medium work were justified after late October 2021; however, not as limiting as the sedentary work recommended by PA-C Day. Accordingly, from late October 2021 onward, the ALJ's evaluation of the physical medical opinions and allowance for modified medium work, rather than modified light work, is not supported by substantial evidence.

This error however does not impact the nondisability decision. The vocational expert testified that even if Plaintiff is limited to light

---

[42] The ALJ's evaluation of Dr. Saue's reviewing opinion also does not shed light on how medium work, rather than light work, is supported. AR 119–29, 597–98. *See Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) (requiring the ALJ to identify the evidence supporting the found conflict to permit the court to meaningfully review the ALJ's finding); *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) ("We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings.").

work there are available occupations in the national economy he can perform, including router (DOT 222.587-038), collator operator (DOT 208.685-010), and non-postal mail clerk (DOT 209.687-026).[43] Although the hypothetical presented to the vocational expert did not include the limitation to frequent handling as recommended by PA-C Day, the identified jobs only require frequent handling.[44] Therefore, the ALJ's errors when evaluating the physical-health medical opinions did not impact the ALJ's nondisability decision.[45]

Nonetheless, because remand is required due to the ALJ's errors regarding Plaintiff's mental health as is explained below, on remand an updated physical consultative examination is to be ordered so that the ALJ crafts a correct exertional RFC, particularly as almost five years have passed since PA-C Day's examination.

---

[43] AR 635–66.

[44] AR 634–36. *See* https://occupationalinfo.org.

[45] *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (requiring the error to be consequential to the disability analysis).

DISPOSITIVE ORDER - 20

### 3.    Mental-Health Opinions

Plaintiff argues the ALJ erred when evaluating the mental-health opinions of Dr. Mansfield-Blair, Dr. Metoyer, Dr. Morgan, Dr. Harmon, and Dr. Eisenhauer, pointing out that the ALJ's offered supportability and consistency reasons were largely duplicative for each mental-health opinion. In response, the Commissioner maintains the ALJ provided several reasons supported by substantial evidence to find each of these opinions unpersuasive. As is explained below, substantial evidence supports the ALJ's overall weighing of the medical opinions as they were each issued well before June 25, 2024, when the record reflects that Plaintiff's mental functioning began declining.

### a.    *The opinions*

In 2018, Dr. Mansfield-Blair conducted a psychological evaluation of Plaintiff and reviewed Plaintiff's adult function report and an encounter note with Dr. Bulfinch.[46] Dr. Mansfield-Blair opined that Plaintiff would have difficulty performing detailed and complex tasks

---

[46] AR 399–403.

DISPOSITIVE ORDER - 21

and work activities on a consistent basis without special or additional instruction.[47]

Two-and-a-half years later, Dr. Metoyer evaluated Plaintiff and reviewed Dr. Mansfield-Blair's report and two medical records from 2019.[48] Dr. Metoyer opined that Plaintiff's memory and sustained concentration were mildly impaired; his ability to interact with coworkers and the public was likely moderately to markedly impaired; his ability to maintain regular attendance, complete a workday or workweek was moderately impaired; his ability to understand, remember, and carry out complex instructions was moderately impaired; and his ability to deal with the usual workplace stress was moderately to markedly impaired if it involved persistent activity or interacting with other individuals.[49]

---

[47] AR 403.

[48] AR 503–07.

[49] AR 507.

DISPOSITIVE ORDER - 22

Dr. Eisenhauer reviewed the medical record in November 2021.[50] She opined that Plaintiff was capable of understanding, recalling, and carrying out simple tasks, frequently interacting with supervisors and coworkers, and occasionally interacting with the public.[51] She also opined that:

> Ongoing psych symptoms would interfere with claimant's ability to maintain sustained concentration, regular attendance and to persist through a normal workweek. However, these impairments are not so severe that they would prevent claimant from being able to sustain three-step tasks in a reasonably consistent manner within a 40 hour workweek on a regular and continuing basis.[52]

In 2023, Dr. Morgan performed a psychological evaluation and reviewed "DSHS records."[53] He found Plaintiff markedly limited in the following activities: learn new tasks; adapt to changes in a routine work setting; ask simple questions or request assistance; communicate and perform effectively in a work setting; maintain appropriate

---

[50] AR 112–17.

[51] AR 116–17.

[52] AR 117.

[53] AR 1030–35.

behavior in a work setting; complete a normal workday and workweek; and perform activities within a schedule, maintain regular attendance, and be punctual.[54] A week later, Dr. Harmon reviewed Dr. Morgan's report and agreed with his opined limitations.[55]

### b.    *Supportability*

Using largely duplicative language when evaluating the supportability factor for each of these medical opinions, the ALJ found each of these medical opinions not fully supported.[56] For Dr. Mansfield-Blair, Dr. Harmon, and Dr. Morgan, the ALJ noted that they examined Plaintiff, were presumably familiar with social security regulations, reviewed only a few records, and only briefly explained their findings.[57]

---

[54] AR 1032.

[55] AR 1037–39.

[56] AR 598–602.

[57] AR 599–601. The ALJ mistakenly stated that Dr. Morgan "had an opportunity to examine the claimant, [and] he did not have an opportunity to examine the claimant." This error did not affect the ALJ's overall evaluation of Dr. Morgan's consultative examination, as

DISPOSITIVE ORDER - 24

For Dr. Harmon and Dr. Eisenhauer, the ALJ relied on each of these same reasons but also noted that they had not examined Plaintiff.[58]

### i.    *Dr. Mansfield-Blair*

Plaintiff challenges the ALJ's finding that Dr. Mansfield-Blair only briefly explained her findings. This challenge is well-founded in part as Dr. Mansfield-Blair did connect each opined limitation with her basis for such. For instance, Dr. Mansfield-Blair wrote, "He would have difficulty performing work activities on a consistent basis without special or additional instruction given his performance on memory task."[59] However, the memory tasks that Plaintiff had difficulty with were the digit span and spelling tests—tests that Plaintiff had difficulty with because of his low education and reading difficulties, rather than due to any observed symptom related to his anxiety or depression, as was reflected in his ability to recall objects immediately

the analysis makes clear that the ALJ understood that Dr. Morgan had evaluated Plaintiff for DSHS purposes.

[58] AR 601–02.

[59] AR 403.

DISPOSITIVE ORDER - 25

and after a distractor task, as well as perform a three-step command[60]. Therefore, even though Dr. Mansfield-Blair did identify the basis for her opined limitations, the ALJ reasonably found Dr. Mansfield-Blair's more limiting opinions regarding Plaintiff's difficulty performing work on a consistent basis unsupported, if Plaintiff performed simple work tasks as the RFC so restricted.

### ii.    Dr. Metoyer, Dr. Morgan, and Dr. Harmon

Plaintiff likewise challenges the ALJ's supportability findings for Dr. Metoyer, Dr. Morgan, and Dr. Harmon because the ALJ's supportability findings were identical to those provided for Dr. Mansfield-Blair. This argument is not substantiated, as substantial evidence supports the ALJ's finding that these opinions' more restrictive limitations are unsupported.

Beginning with Dr. Metoyer, he observed that Plaintiff  had difficulty performing serial number sequences and spelling and also that Plaintiff followed a three-step command and had no difficulty

---

[60] AR 399–404.

following the conversation.[61] Plaintiff recalled one of the three objects, had difficulty with proverbs, and his affect was consistent with his stated mood of anxious, down, depressed, and irritable, but he was cooperative and engaged with no psychomotor agitation.[62] Dr. Metoyer did not link his moderate to marked opinions under the "Functional Assessment" to specific observations or test results, instead mentioning the symptoms solely reported by Plaintiff, which were inconsistent with treating providers normal mental-status observations and interactions, as is discussed more below.[63] In addition, Dr. Metoyer observed that Plaintiff had no problem following the conversation or following a three-step command and that, even though he claimed difficulties interacting with others, he was cooperative and engaged throughout the evaluation with no evidence of psychomotor agitation or pressured speech.[64] The ALJ reasonably found Dr. Metoyer's more

---

[61] AR 505–06.

[62] AR 505–07.

[63] AR 507.

[64] AR 506.

DISPOSITIVE ORDER - 27

limiting opinions—those beyond restricting Plaintiff to simple work tasks and instructions, frequent interaction with supervisors and coworkers, occasional interaction with the public, and occasional work-setting changes—unsupported by his explanation and observations.

When Dr. Morgan evaluated Plaintiff in 2023, he observed Plaintiff to be depressed and to struggle with number spans, spelling, and proverbs, but Plaintiff otherwise presented and tested normally.[65] Dr. Morgan identified the documents he reviewed as "DSHS records."[66] The descriptions of each symptom listed by Dr. Morgan relating to Plaintiff's anxiety and depression were based solely on Plaintiff's reported symptoms and not any corroborating observation by Dr. Morgan and, without more identifying information about the DSHS documents he reviewed, it is unknown what information was contained therein.[67] When Dr. Harmon reviewed and agreed with Dr. Morgan's

---

[65] AR 1030–34.

[66] AR 1030.

[67] AR 1031.

DISPOSITIVE ORDER - 28

report, she did not review other records and she did not provide any further comments to support the opined limitations.[68]

Given the lack of explanation offered by Dr. Morgan and Dr. Harmon, as well as the lack of noted observations by Dr. Morgan to support the marked limitations, substantial evidence supports the ALJ's finding that Dr. Morgan and Dr. Harmon only briefly explained their findings and that their more limiting opinions are unsupported.

### iii.    Dr. Eisenhauer

The ALJ recognized that Dr. Eisenhauer had the opportunity to review available records, was familiar with social security policies, and did not have the opportunity to examine Plaintiff or the record after November 2021.[69] The ALJ found that Dr. Eisenhauer "explained their findings."[70]

The ALJ failed to explain how Dr. Eisenhauer, who did not link her opined limitations to any treatment record or other

---

[68] AR 1037–39.

[69] AR 598.

[70] AR 598.

DISPOSITIVE ORDER - 29

medical evidence, explained her findings whereas Dr. Mansfield-Blair, who did link her opined limitations to observed deficiencies during her examination, did not explain her findings (although as discussed above, Dr. Mansfield-Blair's linked evidence did not corroborate the severity of the limitation). Accordingly, the ALJ erred in this regard. However, this error did not impact the ALJ's treatment of Dr. Eisenhauer's opinion because, even though the ALJ said she found the opinion unpersuasive, the ALJ crafted an RFC consistent with Dr. Eisenhauer's opinion that with the following restrictions Plaintiff was "able to sustain three step tasks in a reasonably consistent manner within a 40 hour workweek on a regular and continuing basis": simple instructions, frequent interactions with supervisors and coworkers, occasional interaction with the general public, and occasional changes and work stressors.[71]

---

[71] AR 116–18, 595.

DISPOSITIVE ORDER - 30

#### c. *Consistency*

Again using duplicative language, the ALJ found these opinions "out of proportion to and not corroborated by the record" because (1) Plaintiff provided inconsistent statements; (2) he interacted appropriately with providers; (3) his mood, affect, and overall mental status were frequently appropriate and unremarkable; and (4) his everyday abilities reflected an ability to care for his hygiene, prepare his own meals, shop, and manage his funds.[72] While the first basis is not supported by substantial evidence, the other three bases are supported by substantial evidence for the period before June 25, 2024, as each of the mental-health opinions were issued well before this date.

First, the only example given by the ALJ as to Plaintiff providing inconsistent statements was that Plaintiff offered varying dates as to when he returned to the United States decades earlier.[73] The timing of when Plaintiff returned to the United States decades before does not indicate a lack of candor about the extent of his medical symptoms.

---

[72] AR 598, 600–01.

[73] AR 597.

DISPOSITIVE ORDER - 31

This error, however, did not impact the ALJ's overall analysis of whether these mental-health opinions were consistent with the record before June 25, 2024, namely how Plaintiff interacted cooperatively with providers, that he was typically observed with a normal mental status, and that there was little record of difficulty with hygiene or daily care before this date. To support this finding, the ALJ cited several medical records, including those for acute physical conditions, mental-health evaluations, and substance abuse treatment.[74] The ALJ

---

[74] AR 598–602 (citing AR 434–36 (Jan. 2018: treatment for jaw swelling, ear pain, trouble sleeping, and reported increase in paranoia); AR 399–404 (Dr. Mansfield-Blair's report); AR 1172 (2018: portion of mental-health assessment); AR 406 (Aug. 2018: chronic tonsillitis); AR 428, 430 (Feb. 2019: treating for numbness near buttocks); AR 500–02 (May 2019: treatment record for abdominal pain, rib pain, insomnia, and anxiety); AR 493 (Sept. 2019: medication management and treatment for abdominal pain, sweating, constipation, and dysuria); AR 453 (May 2020: emergency visit for rib pain and shortness of breath); AR 503–08 (Dr. Metoyer's mental evaluation report); AR 527 (Oct.

evaluated the observations made during these appointments and examinations and reasonably considered that Plaintiff's more disabling reported symptoms were out of proportion to and not corroborated by his interactions with providers, as his mood, concentration, and cooperation were usually normal, absent when he was not taking his medication.[75] Therefore, the ALJ reasonably considered that the mild cognitive deficits observed during psychological consultative

---

2021: treatment for pain in left thumb and elbow); AR 922–34 (substance abuse treatment); AR 1016–90 (June 2022–May 2025 records, including Dr. Morgan's report and Dr. Harmon's review); AR 942 (Oct. 2023 medication adjustment); AR 949 (April 2024: arm and penile rash); AR 1166 (July 2025: abdominal pain)).

[75] *See, e.g.*, AR 455–56 (Feb. 2020: displaying normal mood and affect with normal speech); AR 453 (May 2020: same); AR 23 (April 2023: noting well-articulated speech and that he was cooperative with coherent and congruent thought content, adequate attention, and intact short-term memory); AR 955 (May 2023: noting "would like to get back on his chronic meds, when he is on his meds his mood is fine").

examinations and his self-reported difficulties with irritability and social interactions restricted Plaintiff to simple tasks and instructions, occasional changes in the work setting, frequent interaction with supervisors and coworkers, and occasional interaction with the public, but no further, for the period before June 25, 2024.

In addition, for the period before this date, substantial evidence supports the ALJ's finding that the more restrictive opined limitations were inconsistent with Plaintiff's ability to care for his hygiene and prepare his own meals, shop, and do his finances.[76] While daily living activities do not always serve as substantial evidence to discount a medical opinion's limitations,[77] here, the lack of observed hygiene issues and the lack of reported difficulties about caring for his personal needs to treating providers provide substantial evidence to support the ALJ's finding that Plaintiff's reported hallucinations and anxiety and

---

[76] *See, e.g.*, AR 342 (buy groceries), AR 401 (reporting ability to take care of personal hygiene and house and yard chores).

[77] *See Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).

DISPOSITIVE ORDER - 34

depression symptoms were not as disabling as he claimed to evaluators and to the ALJ for the period before June 25, 2024.

However, beginning June 25, 2024, Plaintiff's interactions with law enforcement, community support personnel, and treatment providers reflect that his mental health severely declined and the ALJ failed to evaluate whether this decline was due to Plaintiff's mental-health impairments or substance abuse.[78] For instance, on June 25,

---

[78] Although Plaintiff received inpatient psychiatric treatment in Mexico from June 2022 to April 2023, the facility's treatment notes indicate that Plaintiff's psychotic disorder was "secondary to consumption of multiple substances." AR 926. Post-release treatment records did not reveal any concerns about significantly declining mental health until June 25, 2024. *See, e.g.*, AR 988–91 (June 9, 2024: appearing alert and no mention of concerns about mental state); AR 946 (April 2024: appearing cooperative with appropriate mood and affect although he mentions that he needs to get back on his regular meds as he is feeling restless and has stopping drinking and using weed); AR 1127 (March

DISPOSITIVE ORDER - 35

2024, a treating provider discussed that Plaintiff was confused about his medication, noting Plaintiff "says he thinks someone swapped his med."[79] Then in July 2024, Plaintiff sought emergency treatment because it felt like his blood was being sucked out of him and that people were trying to break into his house; drug testing that day was negative.[80] On December 15, 2024, Plaintiff contacted police to report thefts of his property; Plaintiff sounded confused and did not know his address.[81] The next day, a member of the Crisis Intervention Case Management team called Plaintiff, and Plaintiff was not cooperative.[82] Later during a home visit with Crisis Intervention Case Management, Plaintiff was "gravely disabled" and he appeared overwhelmed and frustrated by law enforcement's non-action regarding the reported

2024: appearing appropriately dressed with good hygiene and an open attitude, while discussing his substance use).

[79] AR 943–44.

[80] AR 960–68.

[81] AR 1180, 1182.

[82] AR 1183.

stolen property, although he denied hallucinations, was cooperative, friendly, and dressed appropriately.[83] Two weeks later, Plaintiff requested law enforcement involvement for people breaking in, hacking his phone, and slashing his tires[84]; his speech was fast, he reported his mood as stressed, and he was observed to be orientated to time.[85] A month later, when Plaintiff contacted 911 to report his wallet stolen, he was rambling, speaking fast and loud when escalated, and "not making sense," with reporting that people were spying on him and that he had stopped drinking or smoking marijuana.[86]

About a month later, crisis personnel again met with Plaintiff about his reports of theft, with crisis personnel writing: "Client is preoccupied with delusions of roommates and relatives stealing his belongings" and "Client's insight is poor as client denies meth use contributing to problems and agrees to services but historically does

---

[83] AR 1182–84.

[84] AR 1186.

[85] AR 1186.

[86] AR 1186–87.

DISPOSITIVE ORDER - 37

not act to engage them."[87] Plaintiff spoke fast, was irritated, had somewhat tangential thought process, shared that he smokes weed every day and last used methamphetamine the day before last.[88] Subsequent records reflect that Plaintiff continued to experience delusions of individuals stealing his stuff or puncturing his tires, and he was observed with fast speech, as fidgety and anxious, and Plaintiff again reported meth use.[89]

Given the documented significant decline in Plaintiff's mental health beginning June 25, 2024, the ALJ erred by not separately considering the extent of Plaintiff's mental-health symptoms during this later period. But this did not impact the ALJ's evaluation of the mental-health opinions as they were issued well before June 2024.

4.    <u>Summary</u>

The record reveals a significant decrease in Plaintiff's mental health beginning June 25, 2024. Therefore, on remand, a new

---

[87] AR 1191.

[88] AR 1191.

[89] AR 1143, 1193–97.

DISPOSITIVE ORDER - 38

consultative psychological evaluation is necessary, and the ALJ must re-evaluate Plaintiff's mental health beginning June 25, 2024, with the benefit of a new consultative psychological examination. As necessary, the ALJ is to evaluate whether a substance use disorder was an impairment after June 25, 2024, and if so, which of Plaintiff's limitations remain if he stops using drugs and alcohol.[90]

Because this matter is remanded for a new psychological examination and re-evaluation of Plaintiff's mental health beginning June 25, 2024, a new consultative physical evaluation is to be also ordered so that the ALJ can revisit the exertional RFC for this same period.

This new disability evaluation beginning June 25, 2024, is only for the Title 16 claim, as the Title 2 claim, which is based on a date last insured of September 30, 2023, is supported by substantial evidence.

---

[90] *See* 20 C.F.R. § 404.1535, 416.935; *Parra v. Astrue*, 481 F.3d 742 at 748–51 (9th Cir. 2007).

DISPOSITIVE ORDER - 39

**C.    Symptom Reports: Plaintiff establishes consequential error beginning June 25, 2024.**

Plaintiff argues the ALJ erred by (1) finding his physical allegations inconsistent with his treatment and the objective medical evidence, (2) giving undue weight to Dr. Bulfinch's January 2018 physical examination, (3) giving undue weight to Plaintiff's substance use, and (4) giving undue weight to Plaintiff's statement as to when he returned to the United States. In response, the Commissioner argues that substantial evidence supports the ALJ's evaluation of Plaintiff's symptom testimony. As is discussed below, substantial evidence supports the ALJ's finding that Plaintiff's symptom reports are inconsistent with the pre-June 25, 2024 record; however, thereafter, substantial evidence does not support the ALJ's finding.

1.    Standard

After finding a medically determinable impairment, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work.[91] Factors the

---

[91] 20 C.F.R. §§ 404.1529(c), 416.929(c).

DISPOSITIVE ORDER - 40

ALJ may consider when evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: (1) objective medical evidence; (2) daily activities; (3) the location, duration, frequency, and intensity of pain or other symptoms; (4) factors that precipitate and aggravate the symptoms; (5) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (6) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; and (7) any non-treatment measures the claimant uses or has used to relieve pain or other symptoms.[92]

### 2.    ALJ's Reasons and Analysis

The ALJ found Plaintiff's reported symptoms related to his degenerative disc disease and arthropathy not consistent with the largely normal findings on routine physical examinations showing normal strength, motion, gait, and neurological findings; his conservative treatment with medication; and the opinion of his treating

---

[92] *Id.* §§ 404.1529(c), 416.929(c)(2), (3). *See also* 3 Soc. Sec. Law & Prac. § 36:25, Consideration of objective medical evidence (2026).

DISPOSITIVE ORDER - 41

provider Dr. Bulfinch that he could perform at least medium work.[93] The ALJ found Plaintiff's reported mental-health symptoms inconsistent with his ability to usually interact appropriately with providers, the generally normal mental-status findings, and his unremarkable hygiene and ability to shop, prepare meals, and manage finances.[94] The ALJ also mentioned that Plaintiff's psychosis symptoms were experienced during periods of substance use, and that he made "inconsistent statements that detract from the reliability of his self-report," highlighting that Plaintiff reported two different ages at which he moved back to the United States.[95]

Like for the medical-opinion analysis, the discrepancy in Plaintiff's statement as to what year he returned to the United States

---

[93] AR 596–97.

[94] AR 597.

[95] AR 597.

DISPOSITIVE ORDER - 42

does not serve as substantial evidence to discredit his reported medical symptoms. [96]

For Plaintiff's physical-symptom reports, as discussed above, it was not until PA-C Day's examination in October 2021 that the record mentions reduced range of lower extremity strength or range of motion.[97] Then following PA-C Day's examination, the treatment record again reflects normal gait and range of motion in the lower extremities, with mild edema of the lower extremities noted on two occasions.[98] The ALJ reasonably concluded that Plaintiff's more extreme reports of chronic pain and limitations walking were inconsistent with his mostly benign presentations, his adequate

---

[96] *See* 20 C.F.R. §§ 404.1529, 416.929(c)(4); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (The ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid.").

[97] AR 576–83.

[98] *See, e.g.*, AR 1006, 23.

hygiene and care for himself, and the course of treatment, which typically involved anti-inflammatories for his joint pain and prescription pain relievers primarily for acute conditions.[99] But as was explained above, the ALJ should not have relied as heavily as she did on Dr. Bulfinch's 2018 medium-work opinion. This error though was not consequential because the vocational expert testified that there was light work Plaintiff could perform.[100]

Nonetheless, on remand for the Title 16 application, the ALJ is to re-evaluate Plaintiff's physical-symptom reports for the period beginning June 25, 2024, with the benefit of a new physical consultative examination.

As to Plaintiff's mental-symptom reports, substantial evidence supports the ALJ's finding that Plaintiff's more limiting subjective mental-health symptoms were inconsistent with the normal mental-status observations in the medical record before June 25, 2024, and his

---

[99] *See, e.g.*, AR 406, 422, 430–31, 434, 453, 477, 495, 500–02, 529, 952–53, 1144, 1150.

[100] AR 634–36.

DISPOSITIVE ORDER - 44

ability to usually interact appropriately with providers.[101] Although during his psychological examinations, Plaintiff had difficulties with digit spans, spelling, fund of knowledge, and proverbs, along with recall during one psychological examination, Plaintiff otherwise had normal thought process and content, was orientated, cooperative, and had normal speech, insight, and judgment, and presented with good hygiene and grooming.[102] As the ALJ stated, the observed difficulties are reasonably related to Plaintiff's mild cognitive deficits (or marginal education), rather than his anxiety or depressive disorders, and thus these difficulties are reasonably accounted for by limiting Plaintiff to simple tasks with occasional work-setting changes for the period before June 25, 2024.

Yet, after this date, the ALJ erred regarding Plaintiff's subjective symptoms. The record shows that Plaintiff's mental health severely declined during this period. A newer consultative psychological

---

[101] *See, e.g.*, AR 428–30, 453, 493, 500–02, 942, 949.

[102] AR 399–403, 503–07, 1030–35.

DISPOSITIVE ORDER - 45

examination is needed, and the ALJ must re-evaluate Plaintiff's reported symptoms for the period beginning June 25, 2024.

**D.    Illiteracy**

Plaintiff argues the ALJ erred by not considering evidence relating to his illiteracy, including that he did not have schooling after he was 8 or 9 years old and that he stated he cannot read or write.[103] Education and literacy is relevant to one's ability to meet vocational requirements.[104] Regulations distinguish between illiteracy and marginal education:

> (1) Illiteracy. Illiteracy means the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling.
>
> (2) Marginal education. Marginal education means ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs. We generally consider

---

[103] Plaintiff submits this error was harmful depending on his age if he is limited to either sedentary or light work. *See* 20 C.F.R. 404 App. 2, subpart P, Medical-Vocational Grid Rules 201.17, 202.09.

[104] 20 C.F.R. §§ 404.1564, 416.964(a), (b).

that formal schooling at a 6th grade level or less is a marginal education.[105]

Although Plaintiff's schooling was limited to about third grade,[106] the record reflects that Plaintiff was able to read. For instance, on his disability application, Plaintiff marked that he could read and write in English, although he preferred reading and speaking Spanish.[107] The "Observations" sheet from Plaintiff's face-to-face meeting with DSHS staff marks that he can read and write in English, and on his Activity Report, he noted that he enjoys reading the bible.[108] In 2021, he told PA-C Day that his progressing vision problems made it difficult to read; this indicates that he had some skill to read.[109] Likewise,

---

[105] 20 C.F.R. §§ 404.1564, 416.964. *See also* Soc. Sec. Rlg. 20-01p: Titles II and XVI: How We Determine an Individual's Education Category.

[106] AR 505, 1100.

[107] AR 849.

[108] AR 343, 1050. *See also* AR 402 (noting that Plaintiff taught himself to read).

[109] AR 574.

DISPOSITIVE ORDER - 47

treatment records reveal that he received "easy-to-read" discharge instructions.[110] In addition, although he initially reported to the inpatient substance abuse treatment facility that he "was uncapable of reading or writing, as the process advanced he was more open to reading and doing homework."[111]

On this record, Plaintiff fails to establish any error by the ALJ in not evaluating whether Plaintiff was illiterate. Moreover, the three identified occupations involve unskilled work, which one can perform with a marginal education.

## IV.   Conclusion

Substantial evidence supports the ALJ's Title 2 nondisability decision. However, the ALJ's Title 16 nondisability finding is only supported by substantial evidence for the period before June 25, 2024; thereafter, the ALJ failed to consider that Plaintiff's mental health significantly declined. On remand, both a consultative physical

---

[110] AR 478, 573, 982.

[111] AR 935. *See also* AR 938 ("[T]he lack of motivation to read or do homework made the achievement of the goals even more difficult.").

DISPOSITIVE ORDER - 48

examination and psychological examination are to be ordered, the medical record is to be developed beginning June 25, 2024, and the ALJ is to conduct a new Title 16 evaluation for this period, including a DAA analysis if needed.

Accordingly, **IT IS HEREBY ORDERED**:

1.  The ALJ's nondisability Title 2 decision is **AFFIRMED.** The ALJ's nondisability Title 16 decision is affirmed for the period before June 25, 2024, but **REVERSED, and this matter is REMANDED to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g) <u>beginning June 25, 2024</u>**.

2.  The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 12 and 16**, enter **JUDGMENT** in favor of the **Plaintiff**, and **CLOSE** the case.

///

///

//

/

DISPOSITIVE ORDER - 49

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 16th day of June 2026.

EDWARD F. SHEA
Senior United States District Judge